**CHARLTON WOOLEN CO. v. WHITE,**
Former Collector of Internal
Revenue.
No. 3270.

District Court, D. Massachusetts.
April 11, 1939.

Merrill S. June and Bradley B. Gilman, both of Worcester, Mass., for plaintiff.

John A. Canavan, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass., for defendant.

FORD, District Judge.

This is a suit to recover an alleged deficiency of income and excess profits tax for the year 1917, amounting to $11,121.67 and for the further sum of $1,000 paid in compromise of penalties and interest.

Statements of fact and conclusions of law appearing herein are intended to meet the requirements of Rule 52 of the new Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c.

I find the facts as follows: The plaintiff is a Massachusetts corporation and filed its return for the year 1917 on March 29, 1918, and paid the tax shown thereon of $6,730.78 on June 18, 1918. On August 18, 1920 an additional assessment of $11,121.67 was made against the plaintiff for the calendar year 1917. Demand was made for the latter tax by the Collector of Internal Revenue on or about September 23, 1920. On September 30, 1920 the plaintiff filed a claim for abatement in the amount of $5,615.91 and during the time that said claim for abatement was pending the Bureau of Internal Revenue took no steps to make collection of any portion of the additional assessment of $11,121.67. On November 19, 1920 the plaintiff filed with the Collector a claim for refund of $1,480.-05, a portion of the income and excess profit taxes paid on the original return for 1917. No collection of any portion of the additional assessment of $11,121.67 was attempted or made until after the expiration of five years from the date of assessment. During the latter period of five years the books and accounts of the plaintiff were examined by the Bureau of Internal Revenue, and on May 21, 1926 the Commissioner allowed the plaintiff's claim for abatement in the amount of $2,299.22 and rejected the balance. Also during this period of more than five years two additional refund claims for 1917 were filed by the plaintiff and briefs and affidavits were submitted by the plaintiff in respect of the merits of the additional assessment. During this period conferences concerning the determination of the correct tax liability of the plaintiff for the year 1917 were held between representatives of the plaintiff and officials of the Bureau of Internal Revenue. The collection of the additional assessment of $11,121.67 was made by a field representative of the Collector on December 17, 1925.

The field investigation of the plaintiff's tax returns covered the returns of the plaintiff for the years 1916 to 1920, including the calendar year of 1917. Later the review of the revenue agents' field report and the audit and examination by the Income Tax Unit of the Bureau of Internal Revenue of the plaintiff's tax liability was extended to cover the taxable years 1909 to 1920, inclusive.

While this audit was in progress, the plaintiff executed five waivers dated September 21, 1921, January 22, 1924, December 12, 1924, December 10, 1925, and December 17, 1925.

On September 25, 1925, a warrant of distraint was issued by the Collector and demand made upon the plaintiff for the additional taxes for the year 1917 of $11,121.-67, with interest and penalties amounting to $4,865.65. On December 17, 1925 the plaintiff paid to the representatives of the Collector the sum of $11,121.67 on account of the said additional tax for 1917, and an additional sum of $1,000 in compromise of penalties and interest which was finally accepted by the Commissioner.

A claim for refund in the amount of $12,121.67 was filed May 15, 1927; was rejected by the Commissioner, and on November 30, 1927 this suit was instituted.

The plaintiff contends that the collection of the tax in question was barred by the statute of limitations.

The applicable statutes are as follows:

Revenue Act of 1921, c. 136, 42 Stat. 227, 264, 265: "Sec. 250. * * * (d) The amount of income, excess-profits, or war-profits taxes due under any return made under this Act for the taxable year 1921 or succeeding taxable years shall be determined and assessed by the Commissioner within four years after the return was filed, and the amount of any such taxes due under any return made under this Act for prior taxable years or under prior income, excess-profits, or war-profits tax Acts, or under section 38 of the Act entitled 'An Act to provide revenue, equalize duties, and encourage the industries of

the United States, and for other purposes,' approved August 5, 1909, shall be determined and assessed within five years after the return was filed, unless both the Commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax; and no suit or proceeding for the collection of any such taxes due under this Act or under prior income, excess-profits, or war-profits tax Acts, or of any taxes due under section 38 of such Act of August 5, 1909, shall be begun, after the expiration of five years after the date when such return was filed, but this shall not affect suits or proceedings begun at the time of the passage of this Act."

Revenue Act of 1928, c. 852, 45 Stat. 791:

"Sec. 607. *Effect of Expiration of Period of Limitation Against United States.* Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after the enactment of this Act) after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim." 26 U.S.C.A. § 1670(a) (2).

"Sec. 611. *Collections Stayed by Claim in Abatement.* If any internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) was, within the period of limitation properly applicable thereto, assessed prior to June 2, 1924, and if a claim in abatement was filed, with or without bond, and if the collection of any part thereof was stayed, then the payment of such part (made before or within one year after the enactment of this Act) shall not be considered as an overpayment under the provisions of section 607, relating to payments made after the expiration of the period of limitation on assessment and collection." 45 Stat. 875.

Revised Statutes of the United States:

Sec. 3229. "The Commissioner, with the advice and consent of the Secretary, may compromise any civil or criminal case arising under the internal revenue laws instead of commencing suit thereon; and, with the advice and consent of the said Secretary and the recommendation of the Attorney General, he may compromise any such case after a suit thereon has been commenced." 26 U.S.C.A. § 1661.

It was not disputed that the 1917 tax here in question should have been assessed and collected within five years from the date of the filing of the tax return. The return being filed on March 29, 1918 the period of limitations expired under the statute, March 29, 1923.

The defendant argues that the period of limitations was extended by the various waivers given by the plaintiff and it is the contention of the plaintiff that the waivers were intended by both parties to apply only to future assessments that might result from the audit that was being made and that they were not intended to relate to the assessment here involved.

The first waiver dated September 21, 1921 was to the effect that the plaintiff "in consideration of the assurance given it * * * that its liability for all federal taxes imposed * * * for the year ended December 31, 1917 on its net income * * * shall not be determined except after deliberate, intensive and thorough consideration, hereby waives any and all statutory limitations as to the time within which assessments based upon such liability may be entered."

This waiver expired by order of the Commissioner on April 1, 1924. Previous to this a waiver dated January 22, 1924 was given extending the period to April 1, 1925. This was consent "to a determination, assessment and collection of taxes for the year 1917". On December 12, 1924 another waiver was given extending the period to April 1, 1926 for a determination of assessment and collection of the amount of taxes due for the years 1909 to 1919, inclusive. The fourth waiver was filed December 10, 1925 extending the period to December 21, 1926, and a fifth waiver dated December 17, 1925 contained no expiration date.

It appears from the language of the waivers that the obvious intent of the parties was to apply them to the tax which had been assessed in 1920, the tax sought to be recovered in this suit. In four of the tax waivers the direct reference is to the tax "for the year 1917" and in the fifth the year 1917 is included. There is no ambiguity present in the language used in the waivers and parol evidence is not admissible to contradict or modify their plain meaning. And there is nothing in the language of the waivers or the correspondence between the parties to justify a con-

clusion that they had no concern with the 1920 assessment. The contrary is true.

I cannot agree with the contention of the plaintiff that these waivers did not extend the period for collection of the 1920 assessment of the tax here in question. A contention similar to that in the instant case, namely, that the waiver had no reference to the assessment which had been made but only to further assessments was made in the case of Roy & Titcomb, Inc., v. United States, 282 U.S. 811, 51 S.Ct. 197, 75 L.Ed. 727. In this latter case the plaintiff filed a return on June 16, 1919 for the calendar year 1918 and paid the tax assessed. The Commissioner made a jeopardy assessment March 13, 1924 as additional tax for the year 1918. On March 27, 1924 the plaintiff filed a claim for an abatement of the entire amount of the additional tax and on June 7, 1924 and November 20, 1925 waivers in the same terms as those in the instant case were filed with the Commissioner of Internal Revenue. Upon receipt of the claim for abatement the Commissioner considered it, made a further examination of the books and records of the plaintiff corporation and on February 5, 1925 reduced the assessment. On October 23, 1926 he finally decided the abatement claim, reduced the assessment further and determined the correct tax liability for 1918. The tax was paid, after demand by the Collector, in two installments in July and August 1926. Claim for refund was filed by the plaintiff on June 13, 1927 on the ground that the additional tax was collected after the expiration of the statutory period. The Court said in the case of Roy & Titcomb, Inc., v. United States, Ct.Cl., 39 F.2d 753, 755: "It is evident that at the time the consent * * was entered into between the plaintiff and the Commissioner, it was intended that the time for collection should be extended because the tax had already been assessed and plaintiff's claim for the abatement thereof was pending before the Commissioner." Aiken Adm'x v. Burnet, 282 U.S. 277, 51 S.Ct. 148, 75 L.Ed. 339; Stange v. United States, 282 U.S. 270, 51 S.Ct. 145, 75 L.Ed. 335.

The purpose of the plaintiff here in this case was to procure the Commissioner to postpone the collection of the additional assessment until its claim for abatement could be acted upon and the assessment reduced. And it is an obvious fact that the collection of the tax was stayed by the Commissioner because of the filing of the claim for abatement by the plaintiff. In fact the waiver dated December 17, 1925 read as follows: "In order to enable the Bureau * * * to give thorough consideration to any claims for abatement or credit filed * * * covering any income * * * for the year 1917, and to prevent the immediate institution of a proceeding for the collection of such tax * * *."

The Court further stated in Roy & Titcomb, Inc., v. United States, supra (page 756, of 39 F.2d), the language of which is applicable to this case: "At the time * * * consents were entered into the parties were endeavoring to ascertain whether the assessment of the additional tax for 1918, which had already been made, was correct and what portion, if any thereof, should be paid by the taxpayer."

It is my conclusion that the collection on December 17, 1925 of the tax here involved was not barred at that time by the statute of limitations applicable here.

In view of the conclusion reached herein it is unnecessary to consider the other contention of the defendant that inasmuch as the claim in abatement was filed by the plaintiff and collection withheld by the Commissioner, the refund of the tax is barred by the provisions of Section 611 of the Revenue Act of 1928. Mascot Oil Co., Inc., v. United States, 282 U.S. 434, 51 S.Ct. 196, 75 L.Ed. 444; Magee v. United States, 282 U.S. 432, 51 S.Ct. 195, 75 L.Ed. 442; Graham et al. v. Goodcell, 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415; Cf. Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647.

The defendant's motion for judgment is granted, with costs, in accordance with the above opinion.

The defendant's requests for findings of fact and conclusions of law, so far as they are consistent with the above, are granted, and, to the extent that they differ from the above findings and conclusions, they are denied.